# In the United States Court of Federal Claims

No. 17-1100C
(Filed: July 31, 2019)

| | |
|---|---|
| * * * * * * * * * * * * * * * * * | Military Pay; Failure to promote; Wrongful discharge; Administrative review; Army Board for Correction of Military Records; Arbitrary and capricious; Promotion Selection Board; Special Selection Board; OMPF; General Officer Memorandum of Reprimand; Material error; Education requirement waiver; Remand. |
| EDGAR A. TERRY, | |
| *Plaintiff,* | |
| v. | |
| THE UNITED STATES, | |
| *Defendant.* | |
| * * * * * * * * * * * * * * * * * | |

OPINION

This is a military pay case with two distinct claims. The first is a challenge to the Army's failure to promote plaintiff on four occasions. The second concerns plaintiff's discharge prior to receiving what he argues was mandatory treatment for his foot condition. The case is now presented on cross-motions for judgment on the administrative record. Oral argument was held telephonically on July 22, 2019. We grant plaintiff's motion in part as it pertains to the failure to promote and deny it as to wrongful discharge. Defendant's motion is denied as it pertains to the first claim and granted as to the second.

BACKGROUND

Plaintiff, Mr. Edgar A. Terry, has served honorably in the U.S. Army, Army Reserve and Army National Guard for over forty years. He has served on active duty for approximately ninety-four cumulative months.[1] He enlisted

---

[1] He received multiple awards during his service, including the Afghanistan Campaign Medal with Campaign Star, the Armed Forces Reserve Medal with "M" Device and 30 Year Gold Hourglass, the Iraq Campaign Medal with Three Campaign Stars, the Meritorious Service Medal, and the Army

as a Private in 1975 and was commissioned as an officer with the rank of First Lieutenant in 1986. Plaintiff transferred to the United States Army Reserve ("USAR") in 1988. He was promoted to Captain in 1992, and in August 2000 he was promoted to the rank of Major. Mr. Terry was promoted to Lieutenant Colonel ("LTC") in 2012.

He was deployed and mobilized multiple times over the next fifteen years. From February 2001 to November 2001 he was deployed to Bosnia in support of Operation Joint Forge. Plaintiff was mobilized in support of Operation Enduring Freedom from January 2003 to August 2003. On February 11, 2003, while mobilized, plaintiff learned that one of the soldiers in his battalion had received word from the Red Cross that her son had meningitis and was not expected to live. The battalion was in Fort Lewis, Washington, and the soldier's son was in San Diego. Plaintiff sought to help the soldier travel to San Diego as quickly as possible so that she could be with her son. He identified a flight from nearby McChord Air Force Base to Seattle/Tacoma airport where she would board a commercial flight to San Diego. Plaintiff drove the soldier to McChord in a rental car and, upon arriving at McChord, was not permitted to enter because he did not have the rental agreement for the car. Plaintiff ran the gate and was pursued by Air Force security for several blocks before he was apprehended.

Plaintiff was issued a General Officer Memorandum of Reprimand ("GOMOR") for his actions on April 28, 2003. It was written by Major General Kobayashi and detailed Terry's actions. It explained General Kobayashi's intent to file the GOMOR in plaintiff's Official Military Personnel File ("OMPF") and included three enclosures.[2]

The third enclosure was signed by plaintiff on May 5, 2003. By signing, plaintiff acknowledged that he received the GOMOR, read and understood the information presented against him, understood that the GOMOR would be considered for filing in his OMPF, and intended to submit a statement in rebuttal. His response, dated May 7, 2003, requested that the reprimand not be filed in his OMPF, expressed his willingness to accept

---

Commendation Medal.

[2] The third enclosure is included in the Administrative Record but the first and second are not. The OMPF is the military personnel file that the Army consults when making promotion decisions. The option existed to place the GOMOR in a restricted file in his record, where it would not have been reviewed by selection boards or other promotion authorities.

responsibility for his actions, and included an apology.  Still, the Assistant Staff Judge Advocate advised General Kobayashi that the GOMOR should be filed in his OMPF and, on September 25, 2003, General Kobayashi heeded that advice and directed the reprimand, supporting documents, and plaintiff's response be filed in his OMPF.

In 2004, the education requirement for promotion was completion of fifty percent of the Command and General Staff Offices Course ("CGSOC"). Plaintiff was enrolled in that course on March 10, 2004.  The course was set to begin on October 3, 2004.  On April 26, 2004, however, the requirement for promotion from Major to Lieutenant Colonel ("LTC") changed.  Rather than complete fifty percent of the CGSOC to be eligible for promotion, Majors now had to complete the Intermediate Level Education ("ILE") course.

On April 14, 2004, Mr. Terry was mobilized for 365 days in support of Operation Enduring Freedom.  In June 2005, plaintiff transferred to the Missouri Army National Guard and was deployed to Iraq until February 2008 in support of Operation Iraqi Freedom.  He was disenrolled from the CGSOC while he was deployed because his material was outdated.  On June 16, 2006, he was notified of his enrollment in the ILE.  Due to his deployment, plaintiff was unable to complete the course.

In June 2006, Mr. Terry requested an education waiver from the Army on the basis of his active duty deployment so that he could be considered for promotion to LTC without having complete the ILE.  His request was granted on August 17, 2006, by the Army Human Resources Command in a document entitled "MEMORANDUM FOR President, 2006 Reserve Components Selection Board."  The documents states, in toto: "In accordance with Army Regulation 135-155, paragraph 2-15b, MAJ Terry has been granted a waiver for board purposes only of the military educational requirement of consideration to lieutenant colonel."  Administrative Record ("AR") 280.  The memo was placed in his file, and Mr. Terry was considered for promotion to LTC by the Promotion Selection Board ("PSB") that convened on September 12, 2006.  He was not selected.  The letter notifying him of his non-selection stated that, "Selection boards do not record the reason for the selection or nonselection of individual officers."  AR 130.

Shortly after, in February 2007, plaintiff submitted a request to the Department of the Army Suitability Evaluation Board ("DASEB"), through the Human Resources Command ("HRC"), seeking either the removal of the GOMOR from his file or its transferred to a restricted folder of his OMPF

that would not be considered during promotion considerations. On May 23, 2007, the DASEB voted to transfer his GOMOR to the restricted folder of his OMPF, stating, "This action is not to be considered retroactive, nor does it constitute a basis for a referral to a Special Selection Board (SSB)." AR 136. The GOMOR, however, was erroneously kept in the performance portion of the OMPF through the 2007 and 2008 PSBs. *E.g.*, AR 179, 183.

Plaintiff was considered for a promotion by the 2007 PSB but again was not selected. Because the 2007 non-selection was his second, a Selective Continuation Board was convened to consider his continued service. The board recommended plaintiff "for continuation in [his] present grade," and the Secretary of the Army approved. AR 137. This letter also did not specify a reason for non-selection. He was also not selected in 2008 or 2009.[3] Unlike the previous letters, the 2009 letter notifying plaintiff of his non-selection explained that he was not selected because he had not completed the required education requirements before the board convened. AR 353. The letter also stated that selection boards do not record the reason for non-selection except "for failing to complete required civilian and/or military education."[4] *Id.*

In May 2009, plaintiff transferred to the USAR and, over the next six years, served on active duty for twenty-seven months, including deployment to Afghanistan from April 2013 to November 2014

In response to his non-selection by the 2006, 2007, 2008, and 2009 PSBs, plaintiff filed a request for Special Selection Board ("SSB") consideration on May 1, 2010. In his request, plaintiff outlined the errors he believed to be material within his files considered by each board. His request for SSBs was denied on August 11, 2010. The errors plaintiff asserted and the reasons the SSB was denied for each year are as follows.

The alleged errors for 2006 were that plaintiff's board file contained the GOMOR from 2003 and was missing two Officer Evaluation Reports ("OERs"). The missing evaluation reports were dated August 30, 2006 and

---

[3] The AR does not include the letter notifying plaintiff of non-selection by the 2008 PSB.

[4] It is unclear whether this represents a change from earlier Army policy or whether this indicates, contrary to subsequent ABCMR and SSB statements, that the 2007 and 2008 PSBs did not select plaintiff for reasons other than the education requirement. Plaintiff has not argued this as a basis for error in the ABCMR's decision.

September 3, 2006. Plaintiff indicated in his request for a SSB that he petitioned, and was granted, removal of the GOMOR after the 2006 board convened. The SSB was denied for that year because, though plaintiff was educationally qualified in 2006, the GOMOR was not retroactively removed from his file, per the DASEB decision, and the Army HRC found that its presence thus did not constitute a basis for an SSB. The decision recognizes the missing OERs in plaintiff's 2006 file but does not state how or if that fact impacted HRC's denial.

For the 2007 calendar year, plaintiff's OMPF still contained the GOMOR, did not contain the education requirement waiver, and was further void of three additional OERs. This was four months after the DASEB approved the removal of the reprimand to the restricted folder of plaintiff's OMPF. Terry's request for a SSB notes that, when plaintiff discovered the waiver was missing from his file, he forwarded it by email to the PSB because he believed it should have been in his file. The Army's decision not to grant a SSB for that year states that the education waiver was valid only for the 2006 year and did not "carry forward." AR 145. The Army's conclusion was thus that plaintiff was educationally unqualified. HRC also cited the fact that DASEB's GOMOR removal document stated that it was not a basis for an SSB.

The 2008 file suffered largely the same alleged errors as the 2007 file. The GOMOR was still not removed from plaintiff's OMPF; the educational waiver was not included; and several OERs (and two other performance records) were missing. By 2009, the GOMOR had been removed, but there was no educational waiver and two OERs were missing. SSBs were denied for both 2008 and 2009 because the Army HRC found that plaintiff was not educationally qualified and thus the missing OERs could not be the basis for an SSB. A new reason was also listed for the denial for these two years: "You also did not review your board consideration file when given the opportunity." AR 145-46. It is not clear whether that reason is meant to apply to all of the errors or just the missing performance records.

On June 17, 2011, plaintiff completed the ILE course. He was then promoted to Lieutenant Colonel on January 3, 2012. In August 2011, plaintiff applied to the Army Board for Correction of Military Records ("ABCMR") for correction of his military records to retroactively remove the GOMOR from his file and order his promotion to LTC effective from the 2006 or 2007 PSB or, alternatively, that the ABCMR grant SSBs for 2006 and 2007. Plaintiff asserted that the GOMOR "should have never been placed in MAJ Terry's OMPF because it was 'unjust'" and the proper

5

procedures were not followed when the GOMOR was issued. AR 226 (citing Army Regulation ("Army Reg.") 600-37). LTC Terry asserted that he never received two of the enclosures to the GOMOR and only received the reprimand and the acknowledgement form. Moreover, he argued that neither the education waiver he received in 2006 nor the controlling Army Regulation (Army Reg. 135-155) made it clear that the education requirement waiver was for 2006 only. Had either so indicated, plaintiff urged, he would have re-applied for a waiver and, because he was still deployed, it would have been granted.

The ABCMR disagreed. First, the ABCMR held that the GOMOR was proper because plaintiff's actions in February 2003 displayed "flagrant disregard and disrespect" of the United States Air Force and placed his soldier, himself, and others in danger. AR 182. Regarding the procedural errors alleged, the board cited his signature on the GOMOR's third enclosure, acknowledging receipt, without any exception or notation regarding missing pages. The board otherwise found a lack of evidence that would suggest that he had not been presented with the rest of the GOMOR's contents. *Id.*

Next, the ABCMR explained that LTC Terry's argument that he was unaware that his education waiver would not continue was without merit because,

> While the governing regulation does not stipulate the waiver was only good for the 2006 selection board, it also does not indicate that it was valid for any subsequent boards. As a field grade officer in the rank of MAJ, he is responsible for his military career and should have known this information.

AR 183. This decision was made in reliance on an advisory opinion which explained that, because promotion board military personnel messages provide guidance and deadlines for the submission of documents, OERs, waivers, and letters to the board, documents "received outside of the established limits are not considered cause for reconsideration." AR 167. The advisory opinion also said that education waivers "do[]not constitute constructive credit or any other equivalency for the military education requirement" and that his waiver was approved for 2006 only. *Id.* Finally, the ABCMR held that, even though the 2007 PSB erroneously saw the GOMOR an SSB should not be granted since plaintiff was educationally unqualified until completing the ILE in 2011.

Plaintiff sought reconsideration of the ABCMR decision on April 24,

2013. AR 111. In his request, plaintiff argued that the GOMOR overstated the facts of the events and exaggerated LTC Terry's actions as "out of control" and that the officer conducting the legal review gave Major General Kobayashi bad advice. Plaintiff also maintained the same arguments relating to the continued validity of his education waiver and his eligibility for promotion in 2007. He pointed out that, while he was deployed on active duty, his command's focus was on the mission at hand, making it impossible for Terry to meet the education requirements. Thus, given that the reason for the waiver remained unchanged and that no legal mandate or policy guideline stated otherwise, his waiver should have remained valid and in his file.

Again, the ABCMR denied his request. On March 19, 2014, it held that plaintiff "provide[d] an insufficient evidentiary basis to support removal of the GOMOR" from his OMPF. AR 107. In regard to the education waiver the ABCMR said:

> Implicit in the Army's promotion system is the universally accepted and frequently discussed principle that officers have a responsibility for their own careers. The general requirements and workings of the system are widely known and specific details such as RCSB dates and promotion zones, military and civilian education requirements, are widely published in official, quasi-official and unofficial publications, and in official communications. Had the applicant exercised due diligence by maintaining reasonably careful records, he would have known that an approved waiver neither constitute constructive credit or other equivalency for the military education requirement nor carries forward indefinitely.

AR 107-08. Finally, the ABCMR iterated that, since the GOMOR was proper in 2006 and the education waiver invalid in 2007, there was no material error requiring an SSB.

Plaintiff was deployed to Afghanistan from April 2013 to November 2014. During that time, a previous injury was aggravated. Nonetheless, LTC Terry passed Army Physical Fitness Tests on April 16, 2014 and October 13, 2014. When he returned to the United States on November 9, 2014, he notified the personnel in his demobilization unit that he needed medical attention and that his Mandatory Removal Date ("MRD") was about to expire. He repeatedly requested medical treatment until he was seen at William Beaumont Army Medical Center ("WBAMC") in Fort Bliss on November 17, 2014.

7

At WBAMC, LTC Terry was diagnosed with bilateral hallux abducto deformity (bunions). An x-ray report from the same day indicated that plaintiff' pain was constant but worse at the end of the day. The x-ray "reveal[ed] no evidence of fracture or dislocation" and "no evidence of arthritic or inflammatory change." AR 13.d. At a consultation with the Chief of Podiatry Services on November 25, 2014, surgical options were discussed.

On December 1, 2014, an Army doctor requested that plaintiff's active duty be extended for 60 days to evaluate and complete follow-up appointments before plaintiff was either medically cleared or processed into the Warrior Transition Unit. AR 90. A Statement of Medical Examination and Duty Status also dated December 1, 2014, states that plaintiff was "pending surgery in January of 2015." AR 52. Despite these indications, the request to extend his MRD was denied.

Plaintiff revisited the Chief of Podiatry Services at WBAMC on December 23, 2014. At that visit, the treating doctor recorded that "patient is clear to demobilize" but should return to the Podiatry Clinic for follow-up care every two to three months. AR 13.d. Two months later, another doctor at the Orthopedic Clinic at Weed Army Community Hospital wrote on that plaintiff's "relatively minor bunions…would probably be made worse with surgery." AR 13.h. (February 18, 2015).

On December 17, 2014, LTC Terry was involuntarily released from active duty and placed on leave. He was honorably discharged in March 2015 and assigned to the Retired Reserve on April 3, 2015, because he reached the maximum authorized years of service given his rank. AR 295.

It appears from the record that plaintiff was contacted by the Podiatry Clinic at WBAMC in February 2015 to schedule surgery. He also received additional recommendations for surgery throughout the following months. On March 9, 2015, a private doctor recommended surgery; on April 10, 2015, a doctor from the Veterans Administration Medical Center suggested surgery if non-invasive techniques do not work; and on June 1, 2015, a doctor at Riverside Medical Clinic reiterated the recommendation for surgery.

LTC Terry filed another application with the ABCMR on August 17, 2015, requesting active duty orders to obtain medical treatment for the injuries he incurred while deployed. AR 42. Plaintiff requested that his release from active duty on March 7, 2015 be voided, that he be placed on active duty for treatment in the Warrior Care and Transition Program through

the Medical Retention Processing Program, and that he receive back pay and allowance plus his attorney fees and costs. Plaintiff asserted that his Medical Retention Processing – Evaluation ("MRP-E") was not processed once his MRD expired, though it should have been transferred to the Warrior Transition Unit Command which would have determined, along with LTC Terry, whether his MRD should have been extended for medical treatment. AR 74. Moreover, plaintiff argued that he was not medically cleared as of December 14, 2014, when he was out-processed because of the call he received in early 2015 to schedule surgery.

The ABCMR convened on April 7, 2016, and concluded that plaintiff's Army medical record did not demonstrate probable error or injustice. It held that the evidence provided led to the conclusion that surgery was not a medical necessity and thus there was no medical justification to extend plaintiff's active duty for that surgery. There was, additionally, no evidence that plaintiff's bunions were "moderately severe, with exostosis or rigidity and pronounced symptoms, or severe with arthritic changes," either of which would, based on Army Reg. 40-501, be cause for referral to a Medical Evaluation Board. AR 13.

LTC Terry filed a complaint in this court on August 14, 2017. He amended the complaint twice, the second of which was filed in April 2018 and focuses on two overarching issues: the wrongful denial of promotion considerations and the wrongful discharge from active duty. The issues are joined in the parties' cross-motions for judgment on the administrative record.

## DISCUSSION

Plaintiff argues generally that the Army was arbitrary, capricious, and acted contrary to its own regulations and policies when it wrongfully denied him a promotion on multiple occasions and wrongfully discharged him from active duty without medical treatment. In respect to the wrongfully denied promotion, plaintiff asks this court to order removal of the GOMOR from his 2007 PSB file, find that he should have been promoted to LTC by the 2007 PSB, award him back pay and consequential damages, and adjust Active Duty dates accordingly. In respect to the wrongful discharge plaintiff asks that we find he was improperly discharged and was entitled to receive medical treatment for the injuries he sustained while deployed.

Defendant responds that the ABCMR's decisions in 2012, 2014, and 2016 should be upheld because the board's decisions were rational in that

Mr. Terry neither established a legal error nor demonstrated any arbitrary and capricious conduct by the board.

Our review of plaintiff's military records and the ABCMR's decisions is one for rationality or legal error, which is to say that we will not disturb the results unless they were arbitrary, capricious, contrary to law, or unsupported by substantial evidence. *Chambers v. United States*, 417 F.3d 1218, 1227 (Fed. Cir. 2005) (citing *Haselrig v. United States*, 333 F.3d 1354, 1355 (Fed. Cir. 2003)). It is plaintiff's burden to prove error on the part of the Army and the board by "clearly convincing evidence." *Wronke v. Marsh*, 787 F.2d 1569, 1576 (Fed. Cir. 1986) (citing *Dorl v. United States*, 200 Ct. Cl. 626, 633 (1973)). That said, the corrections board, as the relevant agency actor, must present a reason for its decision that shows that it "examin[ed] the relevant data and articulat[ed] a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'" *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto Ins. Co.*, 463 U.S. 29, 43 (1983).

I. Failure To Promote

We begin with the myriad opportunities for promotion of Mr. Terry that plaintiff alleges were irrationally rejected by the Army and ultimately the ABCMR. There are several issues raised by this challenge which plaintiff presents as independent bases for reversal of the board's decisions. Defendant disagrees, arguing that plaintiff's failure to satisfy the education requirement is a reason that none of the alleged errors are material, even if there were error by the board in any respect.

A. The GOMOR Was Procedurally Proper

Plaintiff argues that the issuance and placement of the GOMOR in his personnel file was procedurally deficient. We disagree. Under Army Reg. 600-37 ¶ 3-4b(1)(a), a letter can be filed in a soldier's OMPF if (1) it is ordered by an officer senior to the recipient or issued by direction of an officer with court-marshal jurisdiction over the individual, (2) the letter is referred to the soldier for comment and includes the intent to file the letter, and (3) the letter includes and lists any documents, reports, or investigations that provide a basis for the letter, as long as the recipient has not already had the chance to respond to such documents. Here, plaintiff contends that the GOMOR should not have been filed because he was not provided the applicable documents, reports, and investigations. We acknowledge the difficulty of providing evidence to support the contention that certain

documents were never received. In effect, it is asking the plaintiff to provide something that he argues he does not have.

We view the question through the lens of an administrative review, however. Given the record evidence, we agree with the ABCMR's conclusion that plaintiff's signature on the GOMOR's third enclosure, which acknowledged receipt of the GOMOR and indicated an understanding that it would be considered for filing in his OMPF, indicates sufficient procedural process in the absence of any evidentiary indication to the contrary. It was neither arbitrary nor capricious for the ABCMR to reach that conclusion.

The GOMOR was thus lawfully present in Mr. Terry's file for the 2006 PSB. The only other alleged error in the 2006 PSB decision not to promote was the lack of two OERs in plaintiff's file before that PSB. Defendant concedes that those documents should have been in his file, but neither the HRC nor ABCMR found their absence to be a material error, because of the GOMOR. We note, however, absent from those decisions is the logical predicate that the GOMOR was necessarily disqualifying. The boards appear to have assumed that. In any event, plaintiff did not argue to the board that the absence of the OERs was, by itself, a material error. We thus do not reach the issue.

B. The GOMOR's Continued Presence in Plaintiff's File After it Was Ordered Removed

Next we are confronted by the continued presence of the GOMOR in plaintiff's file during the 2007 and 2008 PSBs. Four months before the convening of the 2007 PSB, the DASEB granted plaintiff's request that the reprimand be removed from his active file and placed into a restricted folder that would not be reviewed by subsequent PSBs. There is no question that this did not take place until sometime before the 2009 PSB. Although the removal of the reprimand was not retroactive nor was its earlier presence in his record a basis for an SSB, its continued presence in his record was an error.

Army regulations make clear that, if, as a result of the error, there was a "fair risk" that it was responsible for plaintiff's non-selection, then it is material and can be a basis for the granting of a SSB. Army Reg. 135-155 ¶ 3-19e(6); Army Reg. 135-155 ¶ 3-21(a). The SSB denial letter and the 2012 and 2014 ABCMR decisions stated that, without a valid education waiver, plaintiff was not eligible for promotion in 2007 and 2008. Plaintiff could not have been promoted because he did not meet education requirements; thus

11

any error in his record was harmless (not material).

### C. The Education Requirement Waiver

Plaintiff takes issue with the predicate for that conclusion, arguing that the waiver was valid beyond 2006 and that, even if the issue is not clear, given the ambiguity of whether the wavier continued in force after 2006, the board's decision was arbitrary because it impermissibly places the burden on plaintiff of overcoming an error that was entirely of the Army's making. It is not Mr. Terry's fault that the 2006 waiver did not indicate whether it continued in force beyond that year, nor is it his fault that the applicable statutes and regulations are silent on the issue. Given that plaintiff was deployed overseas at the time and had no reason to think that his waiver was invalid, Mr. Terry urges that the ABCMR should have granted him some relief, whether through the correction of his records or the convening of an SSB.

Defendant counters that the education waiver cannot be valid in subsequent promotion cycles because neither the waiver nor a regulation stipulate that its validity is indefinite or ongoing. It also contends that, because the waiver reflects that is was "'for board purposes only,'" it was referring only to one board, the upcoming 2006 promotion board. Def.'s M. J. Admin. R. 22 (quoting AR 129). Plus, defendant argues, as stated by the ABCMR, that plaintiff should have known the waiver only lasted one year and that he was responsible to reapply for waivers in subsequent years because he was notified of the education requirement to be eligible for a promotion and the deadline for completing it.[5]

We cannot resolve the question of the continuing validity of the waiver because neither the documentary record nor the applicable regulations provides an answer. The Army HRC's and ABCMR's conclusions are merely bald assertions without explanation or reference, which necessarily leads to the conclusion that those decisions were deficient.

The ABCMR, like any agency in any administrative review, must articulate and explain the basis for its conclusion, and this court has the power to require such an explanation, particularly when it is needed for "meaningful

---

[5] Defendant points to Mr. Terry's waiver request to suggest that he knew the waiver would only last one year because it states that he is requesting the waiver for the 2006 PSB. Since this letter was not in the AR and therefore not considered by the ABCMR, we are not considering it here.

judicial review." *Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1338 (Fed. Cir. 2001) (internal citations omitted). Here, the ABCMR declared, seemingly *ex nihilo*, that all education waivers are valid for a single promotion cycle and that LTC Terry should have known that was the case. The ABCMR points to an advisory opinion that comes to the same conclusion, but that opinion also fails to cite any authority or guidance and places the onus on plaintiff to have known what is seemingly nowhere officially stated. The board is presuming something that was not there. Like the District Court in *Hill v. Geren*, 597 F. Supp. 2d 23, 30 (D. D.C. 2009), concluded, saying "should have known" does not give the court an ability to "discern the Board's reasoning." We agree with plaintiff that the ABCMR did not articulate a reason why LTC Terry's education waiver was only valid for a single promotion cycle or why he should be presumed to have known that.[6]

There is another basis for our conclusion that the ABCMR acted arbitrarily. The 2009 PSB denial letter stated that the LTC education requirement was not met and, most critically, that the reasons for non-selection by a PSB are not recorded *unless* the reason is an education requirement failure. *See* AR 353. The presence of these two statements in the record stand in stark relief to the 2007 and 2008 PSB decisions, which are silent as to the reason for non-selection. The clear implication is that the lack of an education waiver was not the basis for non-selection in those years. This is strong evidence that the HRC and ABCMR assumptions to the contrary were wrong. It is thus likely that the erroneous presence of the GOMOR was the reason plaintiff was passed over by those PSBs, which would be a material error. This further calls into question the ABCMR's assertion that education waivers are valid for only one year. For aught that appears, the 2007 and 2008 PSBs did not share that understanding. In 2009, in contrast, the PSB did. The record is simply unclear why the Army applied the education waiver differently across different years, and there is no controlling legal standard that mandates the result the ABCMR reached nor

---

[6] It is no answer, as the advisory opinion posits, that the fact that education requirements are clearly posted every promotion cycle should have indicated to plaintiff that he needed a new education waiver. He asked for one in 2006, was granted one, and subsequently submitted that same waiver to subsequent PSBs. He clearly had consulted the education requirements, and knew that he could not meet them, but submitted a previously granted waiver that he had no reason to think was invalid given that the circumstances predicating the waiver were unchanged.

did it provide any reason for its conclusion.[7] The case must be remanded to the ABCMR to fill in these gaps, or, if it cannot, provide the necessary correction of plaintiff's records or order a SSB to consider the matter.

II. Wrongful Discharge

Next, we consider whether plaintiff was wrongfully discharged from active duty without receiving medical treatment. Plaintiff points to a policy guideline to argue that plaintiff must be "offered medical care prior to" being released from active duty. *Department of the Army Personnel Policy Guidelines for Overseas Contingency Operations*, ¶7-4(g). He further points to the statements in the record prior to retirement and the medical evidence post-retirement presented to the board that his condition was sufficiently severe.

While we sympathize with LTC Terry's injury, we find no error in the ABMR's decision on this issue. Plaintiff's medical records from December 23, 2014 clearly state that LTC Terry was "clear to demobilize." AR 13.d. Although there are some contemporaneous statements that might suggest that plaintiff's condition necessitated further treatment, we do not reweigh the evidence for the ABCMR. The board considered all of the evidence and concluded, not irrationally, that there was not sufficient evidence to establish that LTC Terry should have been retained for further treatment. We find no error in this regard.

CONCLUSION

Because the ABCMR's decision regarding the continuing validity of the 2006 education requirement waiver was unexplained and no legal authority cited mandates the result the board reached, we remand to the board

---

[7] Defendant also brings to the court's attention that the HRC and ABCMR both concluded that, with or without an education waiver, plaintiff is not eligible for an SSB because he did not exercise due diligence in reviewing his files and remedying any errors prior to the PSBs convening. In support, defendant cites Army Reg. 135-155 ¶ 3-21c, which states, "Reconsideration will normally not be granted when . . . the officer, by exercising reasonable care, could have detected and corrected the error." This appears to be a moot point, however, because defendant concedes that, if the education waiver did not expire in 2006, then plaintiff would be eligible for an SSB in 2007, regardless of "whether he was diligent at the time in reviewing his files." D. M. J. Admin. R. 20 n.2.

to reconsider the issue. If the waiver was valid beyond the 2006 PSB, then the conclusion that the presence of the GOMOR in plaintiff's file was not a material error after the DASEB ordered its removal is unsupported and must be reconsidered as well. We leave to the board what remedy is appropriate should both of those conclusions not be reached again. We affirm the board's decision on the issue of wrongful discharge. Accordingly, the following is ordered:

1. Plaintiff's motion for judgment on the administrative record is granted in part, as explained above, and denied in all other respects.

2. Defendant's cross-motion is granted in part and denied in part as explained above.

3. Pursuant to RCFC 52.2, this case is hereby remanded to the Army Board for Correction of Military Records for a period not to exceed six months from the date that this order is served on the board.

4. This case is stayed pending the outcome of the remand.

5. Defendant shall file a status report every 90 days or less regarding the status of proceedings on remand.

6. The Clerk of Court is directed to serve a certified copy of this remand order and opinion on the Army Board for Correction of Military Records.

        s/ Eric G. Bruggink
        ERIC G. BRUGGINK
        Senior Judge